UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMANDA MARIE ELLIOTT,

         Plaintiff,

                  Case # 16-CV-672-FPG

v.

                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

  Amanda Marie Elliott brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

  Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 16. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

  On August 9, 2012, Elliott protectively applied for DIB and SSI with the Social Security Administration ("SSA"). Tr.[1] 149-61. She alleged disability since May 14, 2012, due to a heart condition and a traumatic brain injury. Tr. 14, 173. On July 30, 2014, Elliott and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge David S. Lewandowski ("the ALJ"). Tr. 30-64. On January 22, 2015, the ALJ issued a decision finding that Elliott was not disabled within the meaning of the Act. Tr. 14-25. On June 24, 2016, the

---

[1] References to "Tr." are to the administrative record in this matter.

Appeals Council denied Elliott's request for review. Tr. 1-4. Thereafter, Elliott commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Elliott's claim for benefits under the process described above. At step one, the ALJ found that Elliott had not engaged in substantial gainful activity since the

alleged onset date. Tr. 16. At step two, the ALJ found that Elliott has the following severe impairments: traumatic brain injury, organic mental disorder secondary to a brain injury, degenerative changes of the neck, myocardial infarction, and lumbar strain. Tr. 16-18. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal an impairment in the Listings. Tr. 18-19.

Next, the ALJ determined that Elliott retained the RFC to perform light work.[2] Tr. 19-23. He also found that she can understand, remember, and carry out simple instructions, perform simple repetitive tasks, adapt to simple workplace changes, and relate adequately to others, but that she cannot drive as a job duty. Tr. 20.

At step four, the ALJ relied on the VE's testimony to determine that this RFC prevents Elliott from performing her past relevant work. Tr. 23. At step five, the ALJ relied on the VE's testimony to determine that Elliott can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 24-25. Specifically, the VE testified that Elliott can work as a sales attendant, marker, and mail clerk. Tr. 24. Accordingly, the ALJ concluded that Elliott was not "disabled" under the Act. Tr. 25.

**II.      Analysis**

Elliott argues that remand is required because the ALJ's mental RFC and credibility determinations are unsupported by substantial evidence. ECF No. 12-1 at 12-21; ECF No. 17. The Court addresses these arguments in turn below.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

### A. Mental RFC Assessment

Elliott asserts that the ALJ's mental RFC determination is unsupported by substantial evidence because he "rejected the only functional assessments of record" and then relied on evaluations that lacked functional limitations and used his lay opinion to "interpret bare medical findings." ECF No. 12-1 at 12. The Court disagrees.

A claimant's RFC reflects what he or she "can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)); *see also* 20 C.F.R. § 416.945(a). The ALJ assesses RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment does not have to "perfectly correspond" with any of the medical source opinions cited in the ALJ's decision; rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). The Court upholds an RFC finding "when there is substantial evidence in the record to support each requirement listed in the regulations." *Desmond*, 2012 WL 6648625, at *5 (citation omitted).

Elliott contends that there are only two medical opinions in the record—one from a non-examining state agency review physician and one from a non-examining state agency review psychologist. The review physician opined that Elliot had marked mental limitations and was disabled. Tr. 614. The review psychologist opined that Elliott can understand and remember simple instructions, sustain attention and concentration for simple tasks, relate adequately with

5

others, and adapt to simple changes. Tr. 74. The ALJ afforded these opinions little weight because he found them contrary to the record evidence.[3] Tr. 22-23. He also discounted them because they were rendered before Elliott's record was complete and the doctors were not treating or examining sources. Tr. 23.

Elliott asserts that, because the ALJ rejected these opinions, he was obligated to develop the record and could not otherwise make an RFC determination. Elliott ignores, however, that the record contains assessments from other sources—Miriam Weber, Ph.D. and Elaine Hulei, Ph.D.—that support the ALJ's RFC determination.

On June 29, 2012, Dr. Weber conducted a psychiatric consultative examination. Tr. 345-47. She opined that Elliott should be given ample time to process complex information and may benefit from having complex tasks broken down into simple steps; would benefit from repetition of important information and may benefit from the use of notes or cues to aid recall; and can retain information successfully encoded. Tr. 346. She also noted that Elliott could maintain focus during the entire evaluation, including a lengthy interview and all cognitive testing, and that she was appropriate, engaged, and on task at all times. *Id.*

The ALJ afforded some weight to Dr. Weber's assessment because he found it consistent with Elliott's improvement since her alleged disability onset date, and he afforded great weight to Dr. Weber's opinion that Elliott would struggle to carry out complex work.[4] Tr. 21. Accordingly, the ALJ found that Elliott can understand, remember, and carry out *simple* instructions, perform

---

[3] Although the ALJ purported to give only little weight to the review psychologist's opinion, his RFC findings that Elliott can understand, remember, and carry out simple tasks, perform simple repetitive tasks, adapt to simple changes in the workplace, and relate adequately with others are consistent with the psychologist's opinion. Tr. 20, 23, 74.

[4] The ALJ was entitled to consider the opinion's consistency with the record as a whole, 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), and to rely on this opinion. *See Barber v. Comm'r of Soc. Sec.*, No. 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016) ("It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion[s] may constitute substantial evidence.") (citations omitted).

*simple* repetitive tasks, and adapt to *simple* workplace changes. Tr. 20. The RFC finding limiting Elliott to repetitive tasks is also consistent with Dr. Weber's opinion that she would benefit from repetition of important information. Tr. 20, 346.

On August 23 and September 29, 2012, Dr. Hulei evaluated Elliott. Tr. 300-03. She opined that Elliott's test scores suggest that her cognitive functioning is adequate on many levels, but that she was cautious in interpreting these scores based on deficits in Elliott's attention. Tr. 302-03. Dr. Hulei opined that Elliott's capacity in decision-making or judgment and ability to integrate information may be reduced. Tr. 303.

The ALJ gave Dr. Hulei's opinion great weight because she is a treating source who met with Elliott several times and evaluated her first-hand.[5] Tr. 22. He also found Dr. Hulei's opinion "grounded in objective examination results," including a "Repeatable Battery for the Assessment of Neuropsychological Status evaluation," [6] *id.* (citing Tr. 302), and supported by the record evidence, because testing by other providers revealed only moderate attention and concentration difficulties and mild memory impairments,[7] *id.* (citing Tr. 590, 600); *see also* Tr. 357, 372, 596, 604, 672 (other reports revealing the same findings). Accordingly, in light of Dr. Hulei's opinion that Elliott's decision-making, judgment, and ability to integrate information may be impaired, the ALJ limited her to only simple instructions, repetitive tasks, and workplace changes. Tr. 20, 303.

Elliott asserts that Drs. Weber and Hulei's assessments are not "opinions," however, the SSA's regulations define medical opinions as "statements from acceptable medical sources that

---

[5] The ALJ was obligated to consider the treatment relationship between Dr. Hulei and Elliott. The SSA promises to "give more weight to medical opinions from [the claimant's] treating sources" because they are most likely to "provide a detailed, longitudinal picture" of the claimant's impairments. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[6] The ALJ is entitled to give more weight to a medical opinion that is supported by "relevant evidence," like medical signs and laboratory findings. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

[7] The ALJ is entitled to give more weight to a medical opinion that is consistent "with the record as a whole." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

reflect judgments about the nature and severity of [the claimant]'s impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). As licensed psychologists, Drs. Weber and Hulei are "acceptable medical sources." *Id.* at §§ 404.1513(a)(2), 416.913(a)(2) (effective Sept. 3, 2013 to Mar. 26, 2017). In accordance with the definition of "opinion," their statements discuss Elliott's mental restrictions, including her difficulty processing complex information, making decisions, using judgment, and integrating information. Tr. 303, 346. Their reports also reflect Elliott's psychiatric symptoms and diagnoses. Tr. 301, 303, 346.

Elliott is correct that an ALJ cannot assess a claimant's RFC based on bare medical findings or records that merely diagnose impairments and do not relate those impairments to functional capabilities. ECF No. 12-1 at 13-14. As explained, however, the ALJ did not do that here. He relied on reports that spoke to Elliott's functional capabilities, and his RFC determination is consistent with the opinions of the review psychologist, Dr. Weber, and Dr. Hulei. Accordingly, the Court finds that the ALJ did not err and that substantial evidence supports the RFC assessment.

**B.     Credibility Assessment**

Elliott also argues that the ALJ's credibility determination is unsupported by substantial evidence. ECF No. 12-1 at 17-21. Specifically, Elliott asserts that the ALJ improperly relied on a "Report of Contact," her daily activities while she resided in a rehabilitation facility, and the alleged improvement in her condition to determine that she was "not entirely credible." *Id.*; *see* Tr. 23. The Court disagrees.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL

8

3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citation omitted). The ALJ's credibility findings "must be set forth with sufficient specificity to permit intelligible plenary review of the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) (quotation marks and citation omitted); *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).[8]

"[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Id.* (quotation marks and citation omitted).

The ALJ must consider all of the claimant's statements about her symptoms and how those symptoms affect her daily activities and ability to work. 20 C.F.R. §§ 404.1529, 416.929 (effective June 13, 2011 to Mar. 26, 2017). However, the claimant's statements alone will not establish disability. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and how they affect her ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* at §§ 404.1529(c)(1), 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the

---

[8] S.S.R. 96-7p was superseded by S.S.R. 16-3p, which became effective on March 28, 2016. S.S.R. 96-7p, however, remains the relevant guidance for the purposes of Elliott's claim, which was decided on January 22, 2015. *See Bailey v. Colvin*, No. 1:15-CV-00991 (MAT), 2017 WL 149793, at *5 n.2 (W.D.N.Y. Jan. 14, 2017).

following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* at §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Elliott asserts that the ALJ's credibility determination was flawed in part because he "improperly characterized a Report of Contact completed by a single decision-maker as a third-party statement from [her] alleged social worker" to reject Elliott's statements about her daily activities. ECF No. 12-1 at 19.

The ALJ noted that Elliott's social worker provided a third-party statement, which revealed that Elliott could independently complete daily activities, attend therapy and take medication without reminders, volunteer as a store manager, socialize with others, clean her room and complete chores, pay attention for several minutes, finish what she starts, understand instructions, and handle changes in her routine. Tr. 22 (citing Tr. 202). The ALJ gave this assessment great weight because the social worker observed Elliott firsthand and her observations were consistent with the record evidence, "which noted that [Elliott] could complete her [daily activities] independently and retained an average level of cognitive functioning." Tr. 22, 23.

Review of this third-party statement indicates that it is a "Report of Contact" completed by C. Elacqua-Guinane who spoke with the social worker by telephone to obtain information about Elliott's daily activities. Tr. 202-03. Elliott argues that this was a report from a single decision-maker ("SDM") instead of a third-party statement from her social worker, and that the ALJ erred by assigning it evidentiary weight. ECF No. 12-1 at 19.

10

"SDMs are non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant." *Hart v. Astrue*, 32 F. Supp. 3d 227, 237 (N.D.N.Y. 2012) (quotation mark and citation omitted); *see also* 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2) (effective June 13, 2011 to Mar. 26, 2017). The SSA has instructed ALJs not to afford SDM opinions "any evidentiary weight at the administrative hearing level, which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error." *Ridley v. Comm'r of Soc. Sec.*, No. 6:16-CV-1353 (WBC), 2018 WL 799160, at *6 (N.D.N.Y. Feb. 8, 2018) (internal quotation mark and citations omitted).

Here, however, it does not appear that Ms. Elacqua-Guinane is an SDM. She did not make an initial disability determination or offer any opinion as to whether Elliott can work—her report merely summarizes her conversation with Elliott's social worker and focuses entirely on Elliott's daily activities. Although the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing her credibility, 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Thus, the ALJ did not err in relying on this report and finding that Elliott's daily activities weakened her credibility.

Elliott also asserts that the ALJ's credibility determination was improper because he did not consider that she performed daily activities while living in a "highly structured" rehabilitation center. ECF No. 12-1 at 19-20. Elliott does not explain how this environment invalidated her ability to successfully complete daily activities, and there is no evidence that independently performing personal care, socializing, and the like are different outside of such a setting. Moreover, there is record evidence that Elliott successfully performed daily activities after her rehabilitation center stay. Tr. 18-19 (citing Tr. 622); *see also* Tr. 50 (testimony that Elliott could

perform childcare, cook, and clean), 594 (indicating Elliott completed a college semester). As mentioned, the ALJ was entitled to consider Elliott's daily activities when he assessed her credibility. Thus, the Court finds that he did not err by discounting her credibility on this basis.

Finally, Elliott argues that the ALJ's credibility determination was flawed because he mistakenly concluded that her cognitive functioning improved during the relevant period. ECF No. 12-1 at 20-21. Throughout his decision, the ALJ noted instances where Elliott demonstrated improvement and had normal test results, and in his credibility analysis he found that Elliott's impairments seem "well controlled with treatment" and that "she has shown significant improvement in her condition." Tr. 23; *see also* Tr. 20 (citing Tr. 424, 431-32, 435, 660), Tr. 21 (citing Tr. 333).

Although Elliott cites several treatment notes with negative findings, the Court is not concerned with whether substantial evidence supports her position; rather, the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). "Under this very deferential standard of review, once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* at 58-59 (internal quotation marks and citation omitted) (emphasis in original). Because the ALJ was entitled to consider Elliott's medication, treatment, and other measures taken to relieve symptoms, 20 C.F.R. §§ 404.1529(c)(3)(iv)-(vi), 416.929(c)(3)(iv)-(vi), and he supported his findings with substantial evidence, the Court finds that the ALJ did not err when he discounted her credibility based on her improved condition.

Finally, although Elliott does not assert that the ALJ erred on this basis, the ALJ also discounted her credibility because he found her to be a "poor historian" who gave "different stories of when she began experiencing chest pains during interviews with doctors and not being

12

forthcoming with her use of drugs." Tr. 23 (citing Tr. 239-40, 251, 623). The ALJ was entitled to consider "any other factors" concerning Elliott's functional limitations and restrictions when he assessed her credibility, 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii), and the Court finds that this further bolsters his credibility assessment.

For all the reasons stated, the Court finds that the ALJ did not err and that his credibility determination is supported by substantial evidence.

## CONCLUSION

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 21, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court